**FILED**

FEB 2 2 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RAYMOND GARAVITO<br>9767 S W 106 Terrace<br>Miami, FL 33176<br><br>RAFAEL RODRIGUEZ<br>7501 Cordoba Circle<br>Naples, FL 34109<br><br>ELLI MIZRAHI<br>14001 Mills Ave<br>Silver Spring, MD 20904<br><br>               Plaintiffs,<br><br>      v.<br><br>AIR LINE PILOTS ASSOCIATION,<br>INTERNATIONAL<br>1625 Massachusetts Ave, N.W.<br>Washington, DC 20036<br><br>           Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>CASE NUMBER  1:07CV00384<br><br>JUDGE: Paul L. Friedman<br><br>DECK TYPE: TRO/Preliminary Injunction<br><br>DATE STAMP: 02/22/2007<br><br>)<br>)<br>)<br>) |

## VERIFIED COMPLAINT FOR PRELIMINARY INJUNCTION, PERMANENT INJUNCTION AND DECLARATORY RELIEF

### INTRODUCTION

Plaintiffs Raymond L. Garavito, Rafael Rodriguez, and Elli Mizrahi, individually and on behalf of all others similarly situated, (hereinafter, collectively with other members of the class, "Plaintiffs") bring this action against Defendant Air Line Pilots Association, International ("ALPA"), as administrator/trustee of a program for the allocation and distribution of funds to compensate pilots of United Air Lines ("United") for the loss of vested pension benefits. This program is an "employee pension benefit plan" within the definition of Section 3(2) of the

Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1002(2). The program is referred to herein as the "Pilots Retirement Compensation Program" or the "Pilots Program."

    1.      This case involves the arbitrary, unreasonable, and discriminatory distribution of pension benefit funds by ALPA to its members who were active United pilots as of December 30, 2004. These funds (hereinafter, "Pension Funds") totaled approximately $537 million and were generated by United's conveyance to ALPA – in connection with the resolution of United's bankruptcy proceedings – of convertible notes ("United Notes") having a face value of $550 million for the purpose of funding the Pilots Program. ALPA was designated to administer the Pilots Program in order to offset a portion of the pension benefits that United's active pilots lost when their United pension plan ("United Plan") was terminated in connection with United's bankruptcy.

    2.      ALPA assumed responsibility for designating a trust or similar vehicle to hold the Pension Funds for the benefit of eligible United pilots, and for overseeing and implementing, as administrator/trustee, the distribution of those Pension Funds by means of the Pilots Retirement Compensation Program. Under the terms of the Pilots Program, ALPA was required to allocate and distribute reasonably the Pension Funds in order to replace a portion of the retirement benefits that active employees lost when the United Plan was terminated. However, rather than administer a fair, reasonable, and equitable plan of distribution of these Pension Funds, ALPA delegated decision-making authority for the allocation methodology to the United Master

Executive Council ("MEC"),[1] a group of United pilots that, on information and belief, included members who stood to benefit financially from adoption of an allocation methodology based on factors other than the amount of vested pension benefits lost as a result of the United bankruptcy.

3.      Despite the conflicts of interest of the MEC members, ALPA, on the recommendation of the MEC, adopted a plan (the "GAP 2 Plan") that violated the terms of the Pilots Program by (a) failing appropriately to take into account the accrued and vested pension benefits that the Plaintiffs lost, and a portion of which the Pilots Retirement Compensation Program was intended to replace; and (b) unfairly, unreasonably, and unlawfully discriminating against Plaintiffs on the basis, *inter alia*, of their age and seniority. In short, ALPA, chose to administer the Pilots Program in such a manner as to divert substantial Pension Funds from Plaintiffs and to give them to the more junior United pilots who had lost less vested pension benefits than Plaintiffs (hereinafter "Junior Pilots").

4.      Plaintiffs, active senior pilots of United as of December 30, 2004 who have received and/or will receive less than a fair, reasonable, and equitable distribution of the Pension Funds due to them under the terms of the Pilots Program, bring this action for declaratory and injunctive relief under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1101 *et seq.*, and common law, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs seek to recover benefits due to them under the terms of the Pilots Retirement Compensation Program and to enjoin ALPA's wrongful depletion of the Pilots

---

[1]      On information and belief, ALPA has established a Master Executive Council for each airline at which it represents employees. The MEC for each airline serves as the coordinating council for ALPA members at that airline.

Program's assets arising from ALPA's breach of its fiduciary duties to Plaintiffs as
administrator/trustee of the Pilots Program.[2]

     5.     ALPA already has distributed approximately $351 million of the Pension Funds
based on the arbitrary, unreasonable, and discriminatory GAP 2 Plan allocation methodology
devised by the MEC. On information and belief, ALPA is on the verge of distributing all or
substantially all of the remaining Pension Funds (totaling approximately $186 million) in the
same arbitrary, unreasonable, and discriminatory manner, and it will do so unless this Court
immediately enjoins such distribution. The distribution of the remaining Pension Funds will
cause irreparable injury to Plaintiffs, as it will exhaust completely the proceeds of the Pilots
Program, and Plaintiffs will be unable to receive from the Pilots Program the reasonable and
appropriate share of the pension benefits to which they are entitled.

     6.     Plaintiffs are seeking both declaratory relief and permanent injunctive relief, as
well as preliminary injunctive relief in the form of a preliminary injunction to ensure that a
reasonable and lawful distribution of the Pension Funds can be effected upon the resolution of
the merits of Plaintiffs' claims. Specifically, Plaintiffs ask the Court, *inter alia*, to (a) declare
that Plaintiffs are due certain benefits under the Pilots Program that have been allocated
improperly by ALPA to Junior Pilots who are participants in the Pilots Program, and that ALPA,
in adopting and implementing the GAP 2 Plan methodology, has acted in an arbitrary,

---

[2]     A complaint seeking monetary damages against ALPA recently was filed in the Northern District
of Illinois on behalf of a group of senior United pilots who have alleged that ALPA breached its duty of
fair representation under the Railway Labor Act in connection with its distribution of the proceeds of the
sale of the United Notes. *Mansfield v. Air Line Pilots Association, International*, 06-CV-6869 (N.D. Ill.).
United has intervened in that case on the grounds that the relief sought by the Illinois plaintiffs could
affect United's bankrupt estate or otherwise trigger the indemnity provisions of an agreement between
ALPA and United if ALPA is held liable for monetary damages. No such issues are raised by this
Complaint, which seeks exclusively injunctive and declaratory relief and seeks no damages against ALPA
or any of its officials.

capricious, and unreasonable manner in its administration of the Pilots Program, has breached its

fiduciary duties to Plaintiffs in violation of ERISA and common law, and has discriminated and

imposed a disparate financial impact against Plaintiffs; (b) order that an accounting of the Pilots

Program be undertaken to identify the exact amount of Pension Funds wrongfully being diverted

from Plaintiffs as a result of ALPA's allocation (hereinafter, the "Diverted Funds"); (c) enjoin

ALPA and the Pilots Program from distributing any of the Pension Funds still being held by

ALPA until an appropriate accounting is completed to identify the total amount of Diverted

Funds; (d) enjoin ALPA and the Pilots Program from distributing any of the Diverted Funds until

Plaintiffs' claims herein can be resolved on the merits; (e) order that the Diverted Funds be

placed in a constructive trust pending adoption of a fair, reasonable, and non-discriminatory plan

of distribution; and (f) order that the Diverted Funds be allocated to Plaintiffs in a fair,

reasonable, and non-discriminatory manner that is consistent with the terms of the Pilots

Program, and ERISA and common law principles.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29

U.S.C. § 1332(e)(1).

8.      Declaratory and injunctive relief is authorized by 28 U.S.C. § § 2201 and 2202,

respectively, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by 29 U.S.C.

§§ 1132(a)(1)(B) and (a)(3).

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). Venue also is

proper in this district pursuant to 29 U.S.C. § 1132(e)(2), because Defendant resides and may be

found in this District and because, upon information and belief, the Pilots Retirement

Compensation Program is being administered in this District and the breach occurred in this District.

## THE PARTIES

10.    Plaintiff Raymond Garavito ("Garavito") is a resident of Florida. As of December 30, 2004, Garavito was, and is today, an active United Airlines pilot who had participated in the United Plan for more than 20 years. Garavito received an initial distribution from the Pilots Program under the GAP 2 Plan in August 2006, and ALPA has indicated that he will receive the balance of his GAP 2 Plan allocation in March 2007. Garavito believes that the distribution is imminent. Garavito has been, and will be, damaged by the adoption of the GAP 2 Plan in the same way as all other members of the Class he seeks here to represent.

11.    Plaintiff Rafael Rodriguez ("Rodriguez") is a resident of Florida. As of December 30, 2004, Rodriguez was, and is today, an active United Airlines pilot who had participated in the United Plan for more than 20 years. Rodriguez received an initial distribution from the Pilots Program under the GAP 2 Plan in August 2006, and ALPA has indicated that he will receive the balance of his GAP 2 Plan allocation in March 2007. Rodriguez believes that the distribution is imminent. Rodriguez has been, and will be, damaged by the adoption of the GAP 2 Plan in the same way as all other members of the Class he seeks here to represent.

12.    Plaintiff Elli Mizrahi ("Mizrahi") is a resident of Maryland. As of December 30, 2004, Mizrahi was, and is today, an active United Airlines pilots who had participated in the United Plan for more than 20 years. Mizrahi received an initial distribution from the Pilots Program under the GAP 2 Plan in August 2006, and ALPA has indicated that he will receive the balance of his GAP 2 Plan allocation in March 2007. Mizrahi believes that the distribution is

imminent. Mizrahi has been, and will be, damaged by the adoption of the GAP 2 Plan in the same way as all other members of the Class he seeks here to represent.

13.    Defendant ALPA is the administrator/trustee of the Pilots Retirement Compensation Program – an ERISA-covered pension plan maintained and funded through the contribution of the United Notes. In its role as administrator/trustee, ALPA is responsible, pursuant to the terms of the Pilots Program, for reasonably allocating and distributing the Pension Funds in such a manner as to compensate eligible United pilots for a portion of their losses of vested pension benefits as a result of the termination of the United Plan. According to ALPA's website, its national officers conduct the association's work, at least in part, from its headquarters in Washington, D.C.

## CLASS ACTION ALLEGATIONS

14.    Plaintiffs bring this action on behalf of themselves and, under Fed. R. Civ. P. 23, as representatives of a Class consisting of the following:

> All pilots employed by United as of December 30, 2004, who will, under the GAP 2 Plan allocation methodology adopted by ALPA, receive less than a pro rata share of the Pension Funds based on the relative amounts of their vested benefits under the United Plan immediately prior to its termination, and after taking into account the value of amounts to be paid by the Pension Benefit Guaranty Corporation. Excluded from the Class are all members of the MEC who voted to adopt the GAP 2 Plan allocation methodology.

15.    Plaintiffs satisfy the "numerosity" requirement of Fed. R. Civ. P. 23(a)(1). The Class is so numerous and geographically disbursed that the joinder of all members is impractical. Plaintiffs reasonably believe that there were approximately 7,000 active United Airlines pilots as of December 30, 2004, of which number approximately one-third are believed to be members of the Class. The exact number and identity of the members of the Class are unknown to Plaintiffs at this time; such information is exclusively in the possession of the Defendant.

16.     Plaintiffs satisfy the "commonality" requirement of Fed. R. Civ. P. 23(a)(2).

There exist in this litigation questions of law and fact common to all Class members, including,

*inter alia*:

a.     Whether ALPA's adoption and utilization of the GAP 2 Plan was arbitrary, capricious, unreasonable, discriminatory, and/or in bad faith;

b.     Whether ALPA's adoption and utilization of the GAP 2 Plan allocation methodology was an abuse of its discretion;

c.     Whether ALPA's adoption and utilization of the GAP 2 Plan deprived the Class members of benefits due to them under the Pilots Retirement Compensation Program;

d.     Whether ALPA's adoption and utilization of the GAP 2 Plan breached its ERISA based fiduciary duties to the Class members;

e.     Whether ALPA's adoption and utilization of the GAP 2 Plan breached its common law fiduciary duties to the Class members;

f.     Whether ALPA's adoption and utilization of the GAP 2 Plan occurred while ALPA was operating under a possible or actual conflict of interest;

g.     Whether the Class members are entitled to injunctive and/or declaratory relief; and

h.     The nature of such relief.

17.     Plaintiffs satisfy the "typicality" requirement of Fed. R. Civ. P. 23(a)(3). Plaintiffs' claims are typical of the claims of the other Class members' claims. Plaintiffs and all members of the Class have been and/or will be similarly injured and damaged by Defendant's wrongful conduct alleged herein.

18.     Plaintiffs and their counsel satisfy the "adequacy" requirement of Fed. R. Civ. P. 23(a)(4). Plaintiffs will fairly and adequately protect the Class's interests. Plaintiffs' interests are coincident with, and not antagonistic to, the interests of the other Class members.

19.     Plaintiffs are represented by experienced and able counsel competent in the prosecution of such complex class action litigation.

20.     This action is maintainable as a class action under Rule 23(b)(1) because the prosecution of separate actions by or against individual members of the Class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class, or (B) adjudications with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

21.     This action is maintainable as a class action under Rule 23(b)(2) because Defendant has acted and/or refused to act on grounds generally applicable to the Class, thereby making appropriate preliminary and permanent injunctive and other equitable relief in favor of the Class.

### FACTS

22.     Plaintiffs are active United pilots who had earned and accrued substantial pension benefits that had vested under the United Plan prior to its termination. These benefits had accrued, over time based on the pilots' actual years of service and annual earnings. United, in connection with its recently-concluded bankruptcy proceedings, terminated the United Plan, effective December 30, 2004. The termination of the Plan caused more than 7,000 active United pilots to lose their accrued and vested pension benefits under the Plan.

23.     United's pilots, including Plaintiffs, also suffered prospective losses as a consequence of the United bankruptcy. Such losses included reduced future wages and employee benefits. These losses of future benefits were unrelated to the pilots' vested pension benefit losses and were addressed in the United bankruptcy proceedings expressly through separate and unrelated mechanisms, including equity grants issued by United. Neither the Pilots

-9-

Retirement Compensation Program nor the Pension Funds were intended to address losses of such future benefits. Rather, the Pilots Program and the Pension Funds were intended specifically to replace a portion of the retirement benefits that the pilots lost when the United Plan was terminated.

24.     The vested benefits for all pilots were guaranteed by the Pension Benefit Guaranty Corporation ("PBGC") up to a statutory maximum of approximately $28,500. As a result of the termination of the United Plan, United pilots who lost their vested pension benefits have received, or will receive, compensation from the PBGC up to this statutory maximum amount. Pilots' losses as a result of the termination of the United Plan, therefore, are represented by the difference between their total vested pension benefits and the value of the lost benefits they will receive as a result of the PBGC guarantee.

25.     To compensate its pilots for a portion of their loss of accrued and vested pension benefits, United, on July 28, 2006, issued to ALPA the United Notes, which had a face value of $550 million, the proceeds of which were to be distributed to a trust or similar vehicle for distribution to the pilots pursuant to the Pilots Retirement Compensation Program. Under the terms of the Pilots Program, ALPA was responsible for, *inter alia*, allocating and distributing the Pension Funds reasonably among the pilots in order to replace a portion of the vested retirement benefits the pilots lost upon the termination of the United Plan.

26.     On information and belief, ALPA chose not to submit any proposed allocation methodology to a vote by its members, or to identify an independent or objective third-party to develop a fair, reasonable, and equitable allocation methodology consistent with the purpose of the Pilots Program. Instead, ALPA delegated complete decision-making authority for determining the Pilots Program's allocation methodology to the MEC – members of which

would directly benefit from the unfair and discriminatory allocation methodology they were recommending. Pursuant to this authority, the MEC rejected a methodology that, consistent with the terms of the Pilots Program, would have allocated the Pension Funds consistent with the pilots' actual losses of accrued and vested pension benefits. Instead, the MEC devised an allocation methodology, *i.e.*, the GAP 2 Plan, that unreasonably and unfairly gives substantial and disproportionate "future credit" to the Junior Pilots by compensating them out of the Pilots Program's funds for projected, and entirely speculative, future career earnings with United (including promotions and pay increases) until the age of 60. ALPA adopted, and is in the process of distributing the Pension Funds according to, the MEC's GAP 2 Plan allocation methodology.

27.    By adopting and implementing the GAP 2 Plan, ALPA has acted, and is acting, in violation of the terms of the Pilots Program that required it to act reasonably to compensate the pilots for their vested pension benefit losses, and in violation of its statutory and common law fiduciary duties to Plaintiffs. ALPA adopted this methodology despite its knowledge that many – and perhaps most – of the Junior Pilots to whom the GAP 2 Plan gives the greatest amount of "future credit" will never in fact perform the assumed future services for United at all, or earn any of the corresponding benefits ALPA is providing them now with its current lump-sum distributions pursuant to the GAP 2 Plan. On information and belief, the result of this allocation is to divert in excess of $100 million of the limited Pension Funds in the Pilots Program from Plaintiffs to the younger Junior Pilots who lost little or no vested benefits as a result of the United bankruptcy.

28.    ALPA's GAP 2 Plan allocation methodology is demonstrably arbitrary, unreasonable, irrational, and discriminatory for several reasons. First, the formula selected by

-11-

ALPA fails to comply with the principal purpose of the Pilots Program that the Pension Funds were intended to compensate pilots for retirement benefits that were *lost* when the United Plan was terminated. It also fails to account for the fact that the Pension Funds were unrelated to *separate* compensation United provided its pilots to offset reductions in future wages and benefits resulting from the bankruptcy proceedings.

29.    Second, the methodology arbitrarily and unreasonably assumes that all Junior Pilots will work for United until age 60, but without any corresponding obligation to do so, or any consideration of the likelihood these future services ever will be performed. Under this methodology, the Junior Pilots could quit working on the day after ALPA distributes the remainder of the Pension Funds, and walk away with a windfall lump-sum payment of retirement benefits, all at the expense of Plaintiffs who are not being compensated enough even to replenish the benefits they *already* earned and which *already* had vested. These assumptions upon which the GAP 2 Plan is based are arbitrary and lack any reasonable basis.

30.    Third, on information and belief, by December 2004, when the United Plan effectively was terminated, the vested benefits of most Junior Pilots had yet to exceed even the statutory maximum benefit guaranteed by the PBGC. Therefore, many of the Junior Pilots will be *fully* compensated for their vested pension benefit losses by their PBGC payments alone. Yet, under ALPA's allocation methodology, these pilots nevertheless have received, and will continue to receive, a windfall of *additional* Pension Funds depleting further the limited pool of Pension Funds available to compensate Plaintiffs' actual losses.

31.    Plaintiffs lost more of their accrued and vested benefits when the United Plan was terminated because they had much more to lose. Plaintiffs' vested benefits also substantially exceeded the maximum PBGC payment, in some instances by hundreds of thousands of dollars.

Nevertheless, even though Plaintiffs' losses far exceeded those of the Junior Pilots, ALPA's arbitrary and unreasonable GAP 2 Plan allocation methodology will provide the Junior Pilots either a windfall of unearned benefits or a disproportionately higher share of their actual losses than Plaintiffs will receive. Indeed, each dollar paid to the Junior Pilots in excess of their proportionate share of any vested retirement benefits they lost has come or will come directly out of the limited pool of Pension Funds available to compensate Plaintiffs for their far greater losses of vested benefits.

32.    On information and belief, at the time it accepted the GAP 2 Plan allocation methodology recommended by the MEC, ALPA knew that Plaintiffs had lost far more in vested retirement funds than the Junior Pilots, and had far fewer years left until mandatory retirement to make up those losses. ALPA also knew that the Pilots Program was intended specifically to compensate pilots for *lost* vested benefits, and that pilots already were being compensated by United for prospective losses of future benefits and already had begun to participate in a new United retirement program that is providing retirement benefits for current and future service. ALPA also knew that it was unreasonable and inconsistent with industry norms to expect each of the Junior Pilots to work for United until the mandatory retirement age of 60. Finally, ALPA's representatives knew that the Junior Pilots were represented substantially in the MEC and among the voting union members and that, by failing to favor those employees over the Plaintiffs, ALPA's representatives could be compromising their own positions of power within the union leadership. As a result, on information and belief, ALPA and the MEC determined to favor the Junior Pilots, irrespective of the reasonableness or fairness of the process, by ensuring that the Pension Funds were allocated disproportionately in favor of the Junior Pilots.

-13-

33.     By implementing the Pilots Retirement Compensation Program by means of the

GAP 2 Plan allocation methodology, ALPA has violated Plaintiffs' rights and its own duties

under ERISA and common law. Specifically, ALPA has acted in an arbitrary, capricious, and

unreasonable manner, and has deprived Plaintiffs of benefits due to them under the terms of the

Pilots Program. ALPA has taken (and continues to take) these actions willfully, in bad faith,

and/or with gross negligence, with the purpose and effect of discriminating against Plaintiffs by

neglecting their interests in order to confer disproportionate benefits on the union membership

majority Junior Pilots.

34.     Absent immediate injunctive relief, Plaintiffs will be irreparably harmed by

ALPA's actions because ALPA intends to deplete entirely the proceeds of the Pilots Retirement

Compensation Program by distributing the entirety of the Pension Funds in accordance with the

unreasonable and discriminatory GAP 2 Plan allocation methodology described above. If ALPA

is permitted to do so, Plaintiffs will be unable to receive from the Pilots Program the reasonable

and appropriate share of the pension benefits they are due under the Pilots Program.

35.     To provide appropriate relief, an accounting should be ordered to determine the

difference between what Plaintiffs would receive under the GAP 2 Plan and Plaintiffs'

proportionate share of the Pension Funds based on vested amounts, taking into account the value

of benefits guaranteed by the PBGC. The difference between these two computations represents

the total pool of Diverted Funds, which funds should be placed in a constructive trust. The

Diverted Funds then should be reallocated among the Plaintiffs to place each of the Plaintiffs in

the position they would be under a proportionate allocation methodology based on all pilots' lost,

vested pension benefits.

-14-

## Count I

### ERISA – 29 U.S.C. § 1132(a)(3)

36.     Paragraphs 1 through 35 are incorporated as if fully set forth herein.

37.     The Pilots Retirement Compensation Program is an "employee benefit pension plan" within the definition of Section 3(2) of ERISA because the Program was established to provide retirement income to employees – in this case, in the form of funds specifically intended to replace a portion of accrued and vested pension benefits lost by United pilots upon the termination of the United Plan. ALPA is the administrator of the Pilots Program. Plaintiffs are participants in the Pilots Program.

38.     Plaintiffs are due certain benefits under the Pilots Retirement Compensation Program but are being deprived of those benefits by ALPA. Specifically, ALPA has failed to act in accordance with the terms of the Pilots Program, including its obligation to allocate *reasonably* the Pension Funds to compensate Plaintiffs for a portion of their lost and accrued pension benefits. ALPA also has acted, through the MEC, in a self-interested manner by choosing to compensate the Junior Pilots (including Junior Pilot members of the MEC) for pension benefits they never earned or accrued, thereby depriving Plaintiffs of their proportionate share of the Pilots Retirement Compensation Program proceeds.

39.     ALPA was obligated to act reasonably in determining the allocation and distribution of the Pension Funds under the Pilots Program. In agreeing to administer the Pilots Program, ALPA also assumed fiduciary duties vis-à-vis its members who had lost their hard-earned, accrued and vested United pension plan benefits, and for whose benefit the Pension Funds were intended.

40.     By these actions and others in administering and implementing an unreasonable, unfair, and discriminatory allocation and distribution of the Pension Funds, ALPA, as the

-15-

administrator of the Pilots Program, has acted unreasonably and in an arbitrary and capricious manner, abused its discretion, breached its fiduciary duties to Plaintiffs, and operated under an actual conflict of interest in preventing Plaintiffs from recovering benefits due to them under the terms of the Pilots Program.

41.     Plaintiffs will suffer irreparable harm unless ALPA, as administrator of the Pilots Program, and the Pilots Program itself, are enjoined from distributing that portion of the Pension Funds that constitutes the amount wrongfully being diverted from Plaintiffs to the Junior Pilots, *i.e.*, the Diverted Funds. Such relief is necessary to enable Plaintiffs to receive the benefits due to them under the Pilots Program.

## Count II

### ERISA – 29 U.S.C. § 1132(a)(1)(B)

42.     Paragraphs 1 through 41 are incorporated as if fully set forth herein.

43.     By violating the terms of the Pilots Program and breaching its fiduciary duties to Plaintiffs as set forth above, ALPA, as administrator of the Pilots Program, has caused Plaintiffs, as participants in the Pilots Program, to be deprived of benefits due to them under the terms of the Pilots Program.

44.     Plaintiffs will be irreparably injured unless they are able to recover the Diverted Funds pursuant to a reallocation methodology that is fair, reasonable, non-discriminatory, and consistent with ERISA and common law principles.

## Count III

### ERISA – 29 U.S.C. §§ 1109, 1332(a)(2)

45.     Paragraphs 1 through 44 are incorporated as if fully set forth herein.

46.     ALPA owes fiduciary duties to Plaintiffs in connection with its administration of the Pilots Retirement Compensation Program. ALPA is required to discharge these duties with the care, skill, prudence, and diligence under the circumstances that a prudent individual or entity acting in a like capacity and familiar with such matters would use in the administration of a pension benefit program like the Pilots Program designed to compensate Plaintiffs for their actual losses of vested pension benefits. ALPA also is required to administer the program in accordance with the terms under which the Program was established, *i.e.*, by reasonably allocating the Pension Funds in such a manner as to compensate Plaintiffs for a portion of the vested pension benefits they lost as a result of the termination of the United Plan.

47.     ALPA failed to act in accordance with its obligation to reasonably allocate the Pension Funds to Plaintiffs in such a manner as to compensate them for a portion of their actual lost vested pension benefits. Instead, ALPA chose to compensate the Junior Pilots disproportionately, and for pension benefits they never earned or accrued, thereby depriving Plaintiffs of their fair, reasonable, and appropriate share of the Pension Funds.

48.     By these actions and others in administering and implementing an unreasonable and discriminatory allocation and distribution of the funds in an arbitrary, capricious, and unreasonable manner, ALPA breached its fiduciary duties to Plaintiffs.

49.     ALPA's breach proximately has caused, and will cause, irreparable injury to the extent Plaintiffs are deprived of their reasonable and appropriate share of the Pension Funds in connection with ALPA's administration of the Pilots Retirement Compensation Program.

### Count IV

### Common Law – Breach of Fiduciary Duty

50.     Paragraphs 1 through 35 are incorporated as if fully set forth herein.

-17-

51.    ALPA is a common law trustee of the Pilots Retirement Compensation Program and, as such, owes common law fiduciary duties to Plaintiffs in connection with that Program. ALPA is required to discharge these duties with the care, skill, prudence, and diligence under the circumstances that a prudent individual or entity acting in a like capacity and familiar with such matters would use in the administration of a pension benefit program like the Pilots Program designed to compensate Plaintiffs for their actual losses of vested pension benefits.

52.    ALPA failed to act in accordance with its obligation to reasonably allocate the Pension Funds to Plaintiffs in such a manner as to compensate them for a portion of their actual lost vested pension benefits. Instead, ALPA chose to compensate the Junior Pilots disproportionately, and for pension benefits they never earned or accrued, thereby depriving Plaintiffs of their fair, reasonable, and appropriate share of the Pension Funds.

53.    By these actions and others in administering and implementing an unreasonable and discriminatory allocation and distribution of the funds in an arbitrary, capricious, and unreasonable manner, ALPA breached its fiduciary duties to Plaintiffs.

54.    ALPA's breach proximately has caused, and will cause, irreparable injury to the extent Plaintiffs are deprived of their reasonable and appropriate share of the Pension Funds in connection with ALPA's administration of the Pilots Retirement Compensation Program.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court grant judgment in their favor against Defendant on Counts I through IV and request that the Court:

a.    Declare that (a) Plaintiffs are due certain benefits under the Pilots Program that have been allocated by ALPA to other participants in the Pilots Program, including the Junior Pilots; and (b) ALPA, as administrator/trustee of the Pilots Program, in adopting the GAP 2

allocation for the distribution of the Pension Funds, has acted in an arbitrary, capricious, and unreasonable manner in its administration of the Pilots Program, has breached its fiduciary duties to Plaintiffs in violation of ERISA and common law, and has discriminated against Plaintiffs;

b.      Order that an accounting be undertaken to identify specifically the total pool of funds that the allocation methodology adopted by ALPA will wrongfully divert from Plaintiffs to other recipients, *i.e.*, the "Diverted Funds;"

c.      Enjoin any distribution of the Pension Funds until an appropriate accounting is completed to identify the total amount of Diverted Funds;

d.      Enjoin ALPA and the Pilots Program from distributing any of the Diverted Funds until Plaintiffs' claims herein can be resolved on the merits;

e.      Order that all of the Diverted Funds be placed in a constructive trust pending adoption of a fair, reasonable, and non-discriminatory plan of allocation and distribution;

f.      Order that all of the Diverted Funds be allocated to Plaintiffs in a fair, reasonable, and non-discriminatory manner that is consistent with the terms of the Pilots Program, and ERISA and common law principles;

g.      Award Plaintiffs their reasonable attorneys' fees and costs of suit; and

h.      Grant such other and further relief as may be just and proper under the circumstances.

DATED: February 22, 2007

Respectfully submitted,

Andrew H. Marks (D.C. Bar No. 932269)
Aryeh S. Portnoy (D.C. Bar No. 464507)
William Flanagan (D.C. Bar No. 311035)
Daniel G. Kim (D.C. Bar No. 484342)
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004
Phone: (202) 624-2500
Fax: (202) 628-5116

Michael S. Olin
Tucker Ronzetti (D.C. Bar No. 73755)
KOZYAK, TROPIN & THROCKMORTON, PA
2525 Ponce de Leon, 9th Floor
Miami, FL 33134
Phone: (305) 372-1800
Fax: (305) 372-3508

Attorneys for Plaintiffs

Of Counsel:   Jeffrey W. Pagano (D.C. Bar No. 965046)
CROWELL & MORING LLP
153 East 53rd Street, 31st Floor
New York, NY 10022
Phone: (212) 223-4000
Fax: (212) 223-4134

## VERIFICATION

I, Raymond Garavito, declare, under penalty of perjury, that the allegations contained in the foregoing Verified Complaint for Preliminary Injunction, Permanent Injunction and Declaratory Relief, are true and correct to the best of my knowledge, information, and belief.

Executed: February 21, 2007

_____
Raymond Garavito

## VERIFICATION

I, Rafael Rodriguez, declare, under penalty of perjury, that the allegations contained in the foregoing Verified Complaint for Preliminary Injunction, Permanent Injunction and Declaratory Relief, are true and correct to the best of my knowledge, information, and belief.

Executed: February 21, 2007

Rafael Rodriguez

## VERIFICATION

I, Elli Mizrahi, declare, under penalty of perjury, that the allegations contained in the foregoing Verified Complaint for Preliminary Injunction, Permanent Injunction and Declaratory Relief, are true and correct to the best of my knowledge, information, and belief.

Executed: February 21, 2007

_____
Elli Mizrahi

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| RAYMOND GARAVITO, RAFAEL RODRIGUEZ, ELLI MIZRAHI | AIR LINE PILOTS ASSOCIATION, INTERNATIONAL |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT 11001
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

CROWELL & MORING, LLP, 1001 Pennsylvania Avenue, NW, Washington, DC 20004, (202) 624-2500

KOZYAK, TROPIN & THROCKMORTON, PA, 2525 Ponce de Leon, 9th Floor, Miami, FL 33134, (305) 372-1800

**ATTORNEYS (IF KNOWN)**

Jonathan A. Cohen, Esq.
Air Line Pilots Association
1625 Massachusetts Avenue, NW
Washington, DC 20036
(202) 797-4080

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ◉ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**◉ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)          OR          ○ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant)
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| **G.  Habeas Corpus/ 2255** | **H.  Employment Discrimination** | **I.  FOIA/PRIVACY ACT** | **J.  Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| **K.  Labor/ERISA (non-employment)** | **L.  Other Civil Rights (non-employment)** | **M.  Contract** | **N.  Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V.  ORIGIN**

◉ 1 Original Proceeding ○ 2 Removed from State Court ○ 3 Remanded from Appellate Court ○ 4 Reinstated or Reopened ○ 5 Transferred from another district (specify) ○ 6 Multi district Litigation ○ 7 Appeal to District Judge from Mag. Judge

**VI.  CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

29 USC 1109,1132 - claims for declaratory/injunctive relief for benefits due under ret benefits plan & breach of fiduciary duties under ERISA, common law

| **VII.  REQUESTED IN COMPLAINT** | ☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | DEMAND $ N/A | Check YES only if demanded in complaint |
|---|---|---|---|
| | | JURY DEMAND: | YES ☐   NO ☒ |

**VIII.  RELATED CASE(S) IF ANY**   (See instruction)   YES ☒   NO ☐   If yes, please complete related case form.

DATE  02/21/2007   SIGNATURE OF ATTORNEY OF RECORD  _(signature)_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.　　COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.　CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.　CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.　CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.　RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.